# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.& J. GALLO WINERY, a California corporation; GALLO GLASS COMPANY a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>STRATEGIC MATERIALS, INC., a Delaware corporation.<br><br>Defendants. | Case No. 1:17-cv-01709-EPG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND COUNTERCLAIMANT STRATEGIC MATERIALS, INC'S MOTION TO STRIKE EXPERT OPINIONS BASED ON UNDISCLOSED DAMAGES CLAIMS**<br><br>(ECF No. 53) |

Plaintiffs E. & J. Gallo Winery and Gallo Glass Company (referred to herein as "Gallo") filed this suit against Defendant Strategic Materials, Inc. ("SMI") alleging breaches of the parties' Supply Agreement. (ECF No. 1.) On June 19, 2019, SMI filed the instant "Motion to Strike Expert Opinions Based on Undisclosed Damage Claims." (ECF No. 53.) SMI seeks to preclude portions of the expert report of Stuart H. Harden ("Mr. Harden") and the entirety of the expert report of C. Philip Ross ("Mr. Ross"). SMI argues that the contested opinions concern claims for damages that Gallo failed to properly disclose under the Federal Rules of Civil Procedure. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

1

**I.    BACKGROUND**

**A. Gallo's Complaint and Initial Disclosures**

According to the Complaint, SMI is a Texas-based corporation that supplies recycled glass and plastic. (ECF No. 1, ¶1.) Gallo is a wine producer and bottle manufacturer that purchases recycled glass (also known as "cullet") from SMI to produce wine bottles. (*Id.* at ¶2.)

Gallo and SMI entered into a 10-year Supply Agreement in which SMI agreed to make available certain volumes of cullet to Gallo each year at certain prices, subject to volume and price adjustments. (*Id.* at ¶12-22.)

Gallo filed this lawsuit in December 2017, alleging that SMI breached the Supply Agreement. Gallo's complaint sought "consequential damages." (*Id.* at ¶VI.) More specifically, the breach of contract allegations assert, in pertinent part that: (1) Gallo was forced to obtain alternative sources of cullet due to SMI's breach of the supply agreement; (2) Gallo was forced to pay higher prices for cullet from SMI's Madera, Sacramento, San Leandro, Commerce, and Vernon glass processing plants and incurred additional costs to make glass due to SMI's failure to supply the appropriate amount of cullet under the Supply Agreement; and (3) Gallo suffered damage due to the failure of certain SMI cullet shipments to meet the specifications in the supply agreement. (*Id.* at ¶25-28.)

The parties served their initial disclosures on March 21, 2018. Gallo's disclosures related to its computation of damages read as follows:

1. Damages of at least $15,823,747.00, reflecting overpayments by Gallo, and rebates and other adjustments provided by the Supply Agreement as a consequence of SMI's failure to comply with the terms of the Supply Agreement. See damages chart and supporting calculations attached to these initial disclosures.
2. Mitigation damages incurred by Plaintiffs to identify and secure alternative cullet supplies due to SMI's threatened and improper termination of the Supply Agreement (to be determined).
3. Attorneys' fees in an amount that will be determined at the conclusion of this matter.
4. Costs to litigate this matter in an amount that will be determined at the conclusion of

this matter.

5. Pre-and post-judgment interest on such damages that will be computed using the appropriate legal rate.

(ECF 55-7, p. 4.) The supporting damages calculations quantified the $15,823,747 as follows: (1) $1,310,830 as "corrected price adjustments," based on the formula in the Supply Agreement for annual price adjustments; (2) $9,764,390 in overpayments for cullet from sources outside Modesto; and (3) an overall volume penalty of $4,748,528 based on a provision in the Supply Agreement that allegedly imposes a penalty on SMI for cullet volume shortfalls. *(Id.* Ex. 1, p. 1.)

Throughout discovery, Gallo sent what it describes as a "revised" appendix to the damages calculations. (ECF No. 60, p. 3.) This revised appendix, which was updated throughout discovery, referenced batch costs. (ECF No. 68, Exh. 7.) As Gallo acknowledged at oral argument, this revised appendix was not sent as a stand-alone document; nor was it labeled as a supplement to the initial disclosures. *See* ECF No. 60. p. 3 (cataloging the names of the files containing reference to batch costs). Gallo also produced various other documents that referenced batch costs. *See* generally ECF No. 68, Exh. 7-25. At no point did Gallo amend the actual initial disclosures to reference batch costs stemming from the breach of contract, energy costs stemming from the breach of contract, or damages related to a February 2019 furnace shutdown supposedly caused by excess fines in cullet that SMI sold to Gallo.

**B. The Contested Expert Reports, Meet and Confer Attempts, and the Instant Motion**

On May 31, 2019, the expert-disclosure deadline, Gallo served expert reports from Mr. Harden and Mr. Ross. According to SMI, Mr. Harden's report set forth new damages theories. Mr. Harden opined in part that because SMI failed to produce the requisite cullet under the supply agreement, Gallo was forced to make its bottles out of raw materials. He also opined that Gallo expended extra amounts in furnace energy costs to process the raw materials (sand, soda ash, and limestone). This combination of raw materials is referred to by the parties as "batch," and the Court adopts that description herein. Mr. Harden set forth a damages theory related to the purchase of batch to make up for the shortfall in cullet. Mr. Harden also set forth a computation

3

of damages for the higher processing costs for manufacturing bottles using batch materials, including higher furnace costs and credit costs.

Mr. Harden also claimed that Gallo incurred $1,959,186 in lost margin and extra cost due to a February 2019 furnace shop closure allegedly caused by defective cullet from SMI. This February 2019 incident is not mentioned in Gallo's Complaint.

For his part, Mr. Ross opined that Gallo purchased cullet from SMI with excess fines that caused the February 2019 furnace shutdown. According to SMI, the "Harden and Ross reports assert a total of $12,485,509 in damages under the previously-undisclosed damage theories." (ECF No. 53 p. 8.)

After receiving the expert reports, SMI notified Gallo that it considered the reports inappropriate to the extent they contained previously-undisclosed evidence and damages theories. Gallo disagreed with SMI's assertion that the damages theories were previously undisclosed.

SMI filed the instant motion to exclude on June 19, 2019, contending that Gallo's damages theories related to batch cost, energy costs, and the February 2019 furnace shutdown were not properly disclosed. (ECF No. 53.) Gallo filed an opposition on July 5, 2019. (ECF No. 60.) SMI filed a reply on July 12, 2019. (ECF No. 62.) The Court heard oral argument on the motion on July 19, 2019. At the Court's instruction, SMI filed a statement with the Court indicating what discovery it wished to undertake relating to the batch and energy cost damages theories. (ECF No. 70.)

**II.     LEGAL STANDARDS**

The Federal Rules of Civil Procedure require parties to provide to other parties "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered…" Fed.R.Civ.P. 26(a)(1)(A)(iii).

And "[a] party who has made a disclosure under Rule 26(a)…must supplement or correct its disclosure" in a "timely manner if the party learns that in some material respect the

4

disclosure…is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* at R. 26(e). If a party fails to properly disclose its damage claims under Rule 26(a) or (e), Rule 37 provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* at R. 37(c)(1).

In determining whether exclusion sanctions are appropriate, the Court looks to whether the failure to supplement or disclose is substantially justified or harmless. "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R&R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citations omitted). Courts look at a variety of factors to gauge substantial justification and harmlessness including "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017) (collecting cases). "At bottom, this is an equitable analysis entrusted to the Court's discretion." *Id.*

Generally, courts in this circuit find that disclosure must occur within the confines of the fact-discovery period:

> Orderly procedure requires timely disclosure so that trial efforts are enhanced and efficient, and that the trial process is improved. The late disclosure of witnesses throws a wrench into the machinery of trial. A party might be able to scramble to make up for the delay, but last-minute discovery may disrupt other plans. And if the discovery cutoff has passed, the party cannot conduct discovery without a court order permitting extension. This in turn threatens whether a scheduled trial date is viable. And it impairs the ability of every trial court to manage its docket.

*Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862-63 (9th Cir. 2014); *see also Goins v. Cty. of Merced*, 2015 WL 3991628 (E.D. Cal. June 30, 2015) (refusing to allow damages theory disclosed for the first time in the plaintiff's deposition near the close of fact discovery); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 3155574 at *5 (N.D. Cal. Aug. 2, 2012)

(refusing to allow new damages theories asserted for the first time in an expert report after the close of fact discovery).

In practice, exclusion sanctions are not automatic, even assuming a failure to show substantial justification or harmlessness. Instead, the text of Rule 37(c) provides that, "[i]n addition to or instead of" exclusion sanctions, the Court may impose other sanctions, including payment of reasonable expenses, including attorneys' fees, caused by the failure to disclose; informing the jury of the party's failure; and any other appropriate sanction. Fed. R. Civ. P. 37(c)(1)(A)-(C). Factors courts use to determine whether exclusion sanctions are appropriate include: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). And "[a]lthough a finding of willfulness or bad faith is not otherwise required, willfulness or bad faith is a factor in deciding the appropriate level of sanction to impose." *Silvagni*, 320 F.R.D. at 242.

In all, the trial court has considerable discretion in determining the appropriate sanction for a party's failure to comply with the disclosure obligations under Rule 26. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Furthermore, although we review every discovery sanction for an abuse of discretion, we give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).") (citations omitted).

III. ANALYSIS

  A. Batch Costs

Much of the parties' briefing addresses whether Gallo adequately disclosed its intention to seek batch costs during the fact discovery period. It is undisputed that Gallo did not include batch costs in its initial disclosures as originally submitted. Nor is there any dispute that Gallo failed to supplement its initial disclosures to include damages for batch costs. The issue, then, is whether Gallo adequately satisfied its disclosure obligations through other means.

Gallo contends that it disclosed its intention to seek batch costs through supplementing its appendix to the initial damages calculations. On October 26, 2018, Gallo provided a "revised

version of the appendix to its Initial Disclosures." (ECF No. 60 p. 3.) This revision estimated the cost for additional batch. Gallo also points to a variety of other documents produced in discovery that contained "batch cost estimates or supporting data for costs for raw materials and energy." (*Id.*)

The Court acknowledges that this disclosure provided some additional information. Nevertheless, it falls well short of a true supplement to Gallo's required disclosures. As SMI notes, the pages containing batch information do not state that Gallo is seeking batch costs as damages; nor do they state that they are components of a damages evaluation. Moreover, it appears that the documents referencing batch costs were not stand-alone documents; rather, they were produced during discovery without indicating a clear intent to supplement Gallo's damage calculations. Courts have rejected this kind of "needle-in-the-haystack" approach to disclosure. *See Asia Vital Components Co. v. Asetek Danmark A/S*, 2019 WL 1369908 at *3 (N.D. Cal. Mar. 26, 2019) (noting that "the post-hoc identification of a needle in the haystack" does not satisfy formal disclosure obligations).

Moreover, some of the documents produced actually seem to *disclaim* batch costs as a form of damages sought. For example, Exhibit 10 to the Fieber declaration (ECF No. 68) contains a page with a reference to "delivered batch," but this batch figure does not appear on the page that provides damages calculations. The same is true of Exhibit 11, a power-point presentation that includes a damages calculation without batch costs. *Id.*

Further, SMI served discovery requests that presumably would have unearthed documents showing how Gallo was arriving at their figures for batch cost damages. Specifically, request for production numbers 64 and 68, which, respectively, called for documents relating to "Gallo's alleged damages as referenced in Gallo's Complaint, including any related communications," and "all documents relating to Gallo's allegation in the complaint that Gallo has 'incurred additional costs to make glass.'" (ECF No. 55-8.) But despite these requests, Gallo did not produce documents sufficient to allow SMI to determine how Gallo was calculating batch costs.

Gallo also asks the Court to find disclosure from a broad request for "consequential damages" in the Complaint. SMI responds that treating such a vague, formulaic recitation as

7

sufficient disclosure would render the initial damages disclosure requirement meaningless. The Court agrees. A party may not avoid its duty to adequately state its damages categories and computations simply by asking for consequential damages in the Complaint. If that were the rule, there would be little reason for a party to set forth the damage categories it seeks.[1]

Gallo also points to interrogatory responses to interrogatories 19 and 23. Interrogatory number 19 asked Gallo to "[d]escribe in detail any efforts made by Gallo since June 2011 to mitigate its purported damage due to SMI's alleged breaches of contract." (ECF 55-14, p. 18.) Gallo responded that "Gallo mitigated its damages by, among other things, purchasing cullet from other sources, including other SMI plants at higher prices; manufacturing from batch; reducing cullet usage." (*Id.*) Interrogatory response number 23 reiterated that Gallo compensated for SMI's failure under the contract by "manufacturing glass from batch…" (ECF No. 55-7, p. 8.)

These disclosures provided some notice to SMI that Gallo intended to claim batch costs as part of its damages. They nevertheless fall short of complying with Rule 26. The description is brief and contains no computation or methodology. *See City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (citing cases for the proposition that damage disclosures must contain analysis and a computation of damages). Moreover, neither interrogatory asked Gallo to state its affirmative damages claims.

Most significantly for the Court, Gallo also points to the deposition testimony of its representative most knowledgeable on damages, Steven Nicholai, as follows:

> Q. Does the April version of this document include any batch costs that Gallo alleges it incurred as a result of volume shortfalls from SMI?
>
> A. It does.
>
> Q. How much batch costs did you calculate in April?

---

[1] Gallo also points out that the Complaint mentions incurring additional costs to make glass. But it is far from clear that this was in reference to a damages claim for batch costs. The phrase seems more aligned with seeking damages for alternative cullet supplies, as it follows an assertion of breach of contract due to Gallo having to seek alternative sources of cullet.

1         A.     As I remember, I think it's like $10 million.

(ECF No. 64, Ex. 26 to the Fieber declaration at 317:24-318:6.)[2]

This deposition testimony is still far short of a Rule-26 compliant disclosure. It is not identified as a supplement to Gallo's initial disclosures and lacks the computation required. It also took place at the tail-end of the discovery period. That said, this testimony provided some meaningful notice that Gallo was claiming batch costs as damages. Moreover, the fact that SMI's counsel knew to ask the question suggests that SMI had some understanding that batch costs could be part of claimed damages.

After reviewing the disclosures regarding batch costs, the Court finds that Gallo did not comply with its Rule 26 disclosure requirements regarding batch costs and that sanctions under Rule 37 apply here. The Court does not find the violation was harmless or substantially justified. *See Brown v. Wal-Mart Store, Inc.*, 2018 WL 2011935 at *4 (N.D. Cal. April 27, 2018) (rejecting argument that the plaintiffs "have not suffered any prejudice because they still have time to conduct expert discovery and prepare their rebuttal reports"). Moreover, the Ninth Circuit has held that a failure to disclose that upsets the Scheduling Order is not harmless. *See Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005), *as amended*.

Yet, in considering whether exclusion or some other sanction is appropriate as addressed below, the Court finds that Gallo made some limited disclosure of its intentions regarding batch costs, and that SMI had some notice, before the close of discovery.

### B.     Energy Costs

Another category of allegedly undisclosed damages relates to energy costs. Mr. Harden opines that Gallo incurred higher energy costs due to the need to use batch materials to manufacture glass. Specifically, Mr. Harden claims that processing raw materials requires more energy than processing cullet, and that replacing cullet with raw materials causes furnaces to emit more carbon, forcing Gallo to consume more carbon credits than it otherwise would have, and that SMI should be charged for the cost of those credits.

---

[2] The document referenced is a version of the revised appendix tied to Gallo's damages calculations.

As an initial matter, neither the Complaint nor the initial disclosures reference energy costs.

At oral argument, when pressed to identify a document that disclosed Gallo's intention to seek energy costs, Gallo's counsel indicated that these costs were folded into batch costs. Even setting aside the insufficiency of Gallo's disclosures regarding batch costs, an implied addition of energy costs within batch costs provides no meaningful disclosure or notice.

Gallo also points to an internal 2016 presentation that mentions "energy savings." (ECF No. 68, Ex. 13.) The Court finds this document insufficient to alert SMI of a potential damages claim based upon energy costs. The document does not state that Gallo is seeking such damages—indeed, it does not mention this lawsuit at all.

Further, as SMI argues, it submitted requests in discovery—particularly requests 64 and 68 as detailed above—that should have captured information about this damage category. But Gallo does not point to any documents related to the purchase of carbon credits; proof of labor costs; or invoices for electricity, gas, or propane that it has produced. This undermines any argument that Plaintiff appropriately disclosed its intention to seek energy costs as a category of damages.

Last, it is unclear that the documents Mr. Harden relied upon to determine energy costs were produced in discovery. For example, SMI maintains that it did not receive a calculation sheet (filed in the record as Exhibit Q to the Powell declaration) that Mr. Harden considered in formulating his opinions. Counsel for Gallo clarified that Exhibit Q did not exist until May 30, 2019—after the discovery deadline. However, it is unclear to the Court that the documents upon which Exhibit Q was derived were produced in discovery. And to the extent that documents were withheld that Mr. Harden relied upon, this belies Gallo's arguments that its damages theories and calculations were properly disclosed. *See Brown*, 2018 WL 2011935 at *4 (finding Rule 26(a)(1)(A) violated when expert relied upon documents not produced in discovery).

For all these reasons, the Court finds that Gallo did not sufficiently disclose its intention to seek energy costs as a category of damages, and no meaningful disclosure or notice was given before the close of discovery. The Court finds this failure to disclose is neither harmless nor

substantially justified.

### C. Damages Related to a February 2019 Furnace Shutdown

The expert reports at issue also analyze damages related to a February 2019 furnace shutdown. Gallo claims that SMI supplied cullet with excess fines (smaller pieces of glass) that caused a temporary furnace shutdown and cost Gallo almost $2 million. This alleged incident occurred long after Gallo filed its Complaint and submitted initial disclosures, but Gallo made no attempt to amend either of those documents. Accordingly, the Court agrees with SMI and finds that this theory of damages was not properly disclosed. None of Gallo's arguments to the contrary are persuasive.

Gallo first argues that the furnace shutdown came out in the depositions of multiple employees such as Joseph Majewski. This is not sufficient disclosure under Ninth Circuit precedent. In *Ollier*, for example, the Ninth Circuit rejected a similar argument from a litigant who claimed witnesses were adequately disclosed when they were mentioned in deposition testimony. *Ollier*, 768 F.3d at 862. So too here, that some deposition testimony—which did not set forth a damage computation or analysis of damages—discussed the February 2019 furnace shutown is insufficient to alert SMI that Gallo was seeking damages related to it, especially when Gallo did not amend its Complaint or initial disclosures to assert this theory. *See also City and County of San Francisco*, 218 F.R.D. at 221 (noting that damage disclosures generally must contain analysis and computation).

Next, Gallo maintains that its employees told SMI's employees about the incident at the time it happened. But disclosure to SMI's employees outside of discovery in this case that an incident occurred is much different than disclosing to SMI and its attorneys that Gallo is seeking a new category of damages related to that incident in a civil lawsuit.

Next, Gallo acknowledges that witnesses with knowledge of the furnace shut down, including Sean Sabet, Myralina Turrecha, and Patrick Hurocy, were not disclosed to SMI prior to the close of discovery. However, Gallo believes that SMI was able to take an equivalent deposition of one James Rhodes who shared interchangeable duties with Mr. Hurocy. The Court disagrees. This deposition obviously does not cure the lack of disclosure, as SMI deposed Mr.

Rhodes without knowledge that Gallo planned to seek damages in connection with the undisclosed furnace shutdown theory. Moreover, that Mr. Hurocy might have shared interchangeable duties with Mr. Rhodes does not necessarily make the two witnesses "interchangeable."

As to Gallo's argument that SMI did not obtain information related to the furnace shut down because it did not ask the right questions in discovery, the Court finds the argument flawed. Initial disclosures are designed to alert the opposing party of the damages claims at issue so they can address discovery accordingly—not the other way around. *See Ollier*, 768 F.3d at 862 (noting that "[t]he theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush").

Finally, Gallo's argument that SMI knew about the furnace shutdown theory because it was able to find an expert to counter it fails to persuade. That a party can scramble to find an expert at the last minute does not absolve the non-disclosing party of its obligations under Rule 26(a) or (e). *See id.* (noting that a party's ability to obtain a last-minute expert does not cure a Rule 26(a) or (e) violation).

The Court finds that Gallo failed to comply with its Rule 26 disclosures regarding the furnace shutdown. Moreover, there was no mitigating disclosure or notice before the close of discovery regarding this theory of damages. And again, the failure to disclose is not harmless or sufficiently justified.

### D. Sanctions

As noted, the Court has considerable discretion when issuing sanctions under Rule 37(c). After thorough consideration the Court will not order the exclusion of evidence related to the batch cost theory of damages. Instead the Court will allow for a supplemental discovery period in which SMI may probe the theory through the discovery set forth in its July 26, 2019 Statement to the Court. (ECF No. 70.) The Court will also allow SMI to supplement its expert reports or, if necessary obtain a new expert to address the batch cost damages. As a sanction for Gallo's failure to disclose, however, the Court will order Gallo to pay for the attorney fees and costs SMI

incurred in bringing this motion, as well as the costs of one supplemental deposition.

However, the Court will exclude Gallo's expert reports related to the energy costs and the February 2019 furnace shutdown. The Court finds the prejudice to SMI would be substantial if it had to defend against these claims, as Gallo failed to provide any notice of them. The Court also finds that additional discovery to address the claims would unduly upset the Scheduling Order and a timely trial in this matter. The Court also finds that Gallo has not offered a persuasive explanation for its failure to amend its Complaint or the initial disclosures to address the furnace upset. Again, a party's explanation for the failure to disclose evidence also bears on the analysis. *See San Francisco Baykeeper v. West Bay Sanitary Dist.*, 791 F.Supp.2d 719, 733 (N.D. Cal. 2011).

## IV. CONCLUSION

Accordingly, based on the foregoing, IT IS ORDERED THAT:

1. SMI's Motion to Strike (ECF No. 53) is GRANTED IN PART to the extent it seeks a sanction against Gallo for failure to disclose its intention to seek batch costs as an item of damages. Gallo shall pay SMI's reasonable attorney fees and costs related to this motion, as well as the costs of one supplemental deposition related to batch costs. The parties are directed to meet and confer regarding the amount of attorney fees and costs to be awarded to SMI. No later than 30 days after the issuance of this Order, the parties shall file a stipulation with the Court to the extent they are able to agree on the amount of attorney fees and costs. Otherwise, SMI shall file a motion seeking a specific amount of attorney fees and costs consistent with this order, with supporting documentation no later than 30 days after the issuance of this Order.

2. To the extent that SMI's motion for sanctions seeks exclusion sanctions regarding batch costs, the motion is DENIED.

3. The parties shall meet and confer regarding a timeline to complete the supplemental discovery related to batch costs set forth in ECF No. 70, as well as the timeline for SMI to supplement its expert reports or obtain a new expert to address the batch costs theory of damages. To the extent the parties are able to agree on a time period to

complete this discovery, including adjustment of other pertinent dates in the Scheduling Order, the parties shall file a stipulation to that effect no later than 30 days from the issuance of this Order. Otherwise, the parties shall seek the Court's assistance in any dispute concerning the schedule.

4. SMI's Motion to Strike is GRANTED to the extent it seeks exclusion sanctions related to Gallo's claim for energy cost damages. The portions of Stuart H. Harden's expert report opining as to energy costs are STRICKEN, and Gallo is precluded from offering any evidence on this theory of damages.

5. SMI's Motion to Strike is GRANTED to the extent it seeks exclusion sanctions related to the February 2019 furnace shutdown. The expert report of C. Phillip Ross is STRICKEN in its entirety, paragraphs 60-65 of the expert report of Stuart H. Harden are STRICKEN, and Gallo is precluded from offering any evidence on this theory of damages.

IT IS SO ORDERED.

Dated: __**August 7, 2019**__        /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE